IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDDIE ADAMS, et al.,<br>    Plaintiffs,<br><br>v.<br><br>BRG SPORTS, INC., et al.,<br>    Defendants. | Case No.: 1:17-CV-08972 |
| JAMES BRADSHAW, et al.,<br>    Plaintiffs,<br><br>v.<br><br>BRG SPORTS, INC., et al.,<br>    Defendants. | Case No.: 1:18-CV-00129 |
| CORY BRANDON, et al.,<br>    Plaintiffs,<br><br>v.<br><br>BRG SPORTS, INC., et al.,<br>    Defendants. | Case No.: 1:17-CV-08544 |
| JEFFREY JONES, et al.,<br>    Plaintiffs,<br><br>v.<br><br>BRG SPORTS, INC.,<br>    Defendant. | Case No.: 1:18-CV-07250 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ON
TERMINATING SANCTIONS AND OTHER APPROPRIATE RELIEF FOR
EGREGIOUS MISCONDUCT**

## INTRODUCTION

During the August 30, 2021 deposition of plaintiffs' purported medical-causation expert, Dr. Randall Benson, Riddell[1] discovered indisputable evidence of fraud on the Court, on Riddell, and on the judicial process, including the following specific egregious examples:

1. Plaintiffs served falsified specific-causation reports that Dr. Benson testified were not his, that he had not seen until the day before his deposition (over eight months after plaintiffs served these reports on Riddell), that misrepresented the work he did, and that contained false specific-causation conclusions that he had not formed.

2. Dr. Benson admitted he did not author his general-causation report; rather, he only changed a few words and typographical errors in what plaintiffs' counsel copied from the complaints. Dr. Benson conceded doing so little work in total before the report was served (a thirty-minute call with plaintiffs' counsel Vincent Circelli) that his contributions were, in his words, "nothing terribly substantial." Dr. Benson's involvement and familiarity with what was supposedly his report was so negligible that he couldn't say whether it was changed by plaintiffs' counsel after Dr. Benson provided his signature for it on a separate blank page.

3. Plaintiffs served falsified lists of materials on which Dr. Benson supposedly had been "consulted" and relied. But Dr. Benson did not compile—and not until his deposition had he even seen—these attachments to the general- and specific-causation reports listing materials that he supposedly "consulted upon" and relied on in preparing the reports. These ginned-up lists materially misrepresented that Dr. Benson did work he admitted in his deposition he did not do. In fact, Dr. Benson had none of the materials listed in either list, he reviewed none of the materials listed, and he did not "consult" or rely on any of them—contrary to plaintiffs' numerous representations to Riddell and the Court that he did.

4. During his deposition, Dr. Benson admitted that he and plaintiffs' attorney Grant Hamilton (who defended the deposition even though he is neither licensed to practice in Illinois nor admitted here *pro hac vice*) knew before the start of his deposition that plaintiffs' counsel had served falsified specific-causation reports, but they proceeded with the deposition nonetheless, without disclosing that knowledge until a couple hours into the deposition, when Riddell asked Dr. Benson specifically about the admittedly false ultimate-opinion language in the specific-causation reports.

5. Plaintiffs filed the falsified reports and lists of materials consulted upon with the Court, and they made numerous knowingly false representations to the Court about the authorship of those reports and about Dr. Benson's purported retention, work, and supposed opinions.

---

[1] Riddell refers jointly to defendants Riddell, Inc. and BRG Sports, Inc. for convenience only.

1

6. Plaintiffs' counsel—both Mr. Circelli and Mr. Hamilton—appear to have misled Dr. Benson as well, telling him he had more time to work up the seven plaintiffs' specific-causation cases, despite the deadline for case-specific reports having long since passed and expert discovery having closed. Meanwhile, plaintiffs have repeatedly insisted in Court filings that Dr. Benson had already done everything he needed to do, had performed substantial work, had reviewed extensive case-specific materials (including the materials listed in the falsified attachments to the reports), and had finalized case-specific opinions after reviewing (for example) plaintiffs' medical records, none of which he had done and none of which was true.

"There is no question as to this Court's authority to order the ultimate sanction of dismissal in the face of such egregious conduct—or as to the propriety of doing so."[2] This is because such misconduct may show "such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court."[3] Indeed, there "are species of misconduct that place too high a burden . . . for a court to allow a case to continue."[4] The flagrant, brazen, serial pattern of abusive misconduct by plaintiffs, their counsel, and their expert presents just such an example.

## FACTUAL BACKGROUND

**A.     After missing their deadline supposedly because of a calendaring error, Plaintiffs disclosed Dr. Randall Benson on alleged general injury causation in a report whose contents the Court noted "are nearly identical to the allegations in the plaintiffs' amended master complaint."**

The Court has long recognized and emphasized the critical and dispositive role of causation in this litigation, dating back to the preliminary motions phase,[5] during Science Day, and repeated again in ruling on Riddell's recent motion.[6] In keeping with recognition of the importance of expert

---

[2] *U.S. ex rel. Salmeron v. Enter. Recovery Sys., Inc.*, No. 05 C 4453, 2008 WL 3876135, at *9–10 (N.D. Ill. Aug. 18, 2008).
[3] *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003).
[4] *Barnhill v. United States,* 11 F.3d 1360, 1368 (7th Cir. 1993).
[5] (Mem. Op. & Order at 10 (Oct. 5, 2018), ECF No. 182.)
[6] (Mem. Op. & Order at 6 (Apr. 17, 2021), ECF No. 409.)

evidence on this linchpin issue, the Court set separate deadlines for expert testimony on general causation, and later for case-specific expert testimony (including specific injury causation).[7]

Despite its critical nature and the longstanding deadlines for expert disclosures, plaintiffs missed the first deadline, blaming a "calendaring error" whereby "Counsel for Plaintiffs erroneously calendared the deadline for 26(f) disclosures for August 24, 2020, rather than July 24, 2020."[8] On August 3, 2020, they further represented to the Court: "While Plaintiffs have retained a general causation expert—a practicing physician—and the report is nearly complete, Plaintiffs respectfully request a one-time extension to August 26, 2020,"[9] which the Court granted.

On that extended deadline, Plaintiffs disclosed Dr. Benson. Upon receiving Dr. Benson's claimed report, Riddell believed it was improperly ghost-written by plaintiffs' counsel—not Dr. Benson, as required under Rule 26. In moving to strike Dr. Benson's report, Riddell showed it was in large part word-for-word identical to the plaintiffs' complaints, which the Court also noted.[10]

Plaintiffs denied this charge, insisting that Dr. Benson had properly authored the report, and representing to the Court that in doing so, Dr. Benson had "relied on dozens of scientific, peer-reviewed articles in support of his opinions on Riddell's helmet design, as referenced in Exhibit A-2 of his report."[11] They argued Riddell was wrong about the lack of scientific evidence to support whatever general-causation opinions Dr. Benson's report attempted, writing: "This is manifestly not the case—as confirmed by articles discussed above, as well as a wealth of other

---

[7] (*E.g.*, Corrected CMO-1 (May 6, 2019), ECF No. 302.)
[8] (Pls.' Request for Modified Scheduling Order at 1 (Aug. 3, 2020), ECF No. 351.)
[9] (*Id.*) Plaintiffs' representations are suspect. Dr. Benson testified his first contact with plaintiffs' counsel was not until August 19, 2020, and that counsel drafted the general-causation report and sent it to him to review only sometime after that contact—i.e., two weeks *after* plaintiffs represented to the Court they had retained a general-causation expert whose report was "nearly complete." Deposition of R. Benson (Benson Dep.) at 14:25–15:2, 15:21–23, 24:20–25:19, Ex. 1.
[10] (Defs.' Mot. to Strike Dr. Benson & App'x 1 in Supp. (Nov. 19, 2020), ECF Nos. 363, 363-1; *also* Mem. Op. at 12 (Apr. 17, 2021).)
[11] (Pls.' Mem. in Opp'n to Mot. to Exclude Dr. Benson at 6, 10 (Dec. 28, 2020), ECF No. 382.)

scientific, peer-reviewed articles that Dr. Benson specifically reviewed and relied upon."[12] And they chided Riddell for moving to exclude Dr. Benson without first deposing him—even though the general causation deposition deadline had passed after plaintiffs had unilaterally cancelled his noticed, timely deposition—based on Riddell's well-founded belief that "Dr. Benson's report provides no indication that, if deposed, he would provide any additional information about his purported work or his opinions, beyond what is already provided in his 'report.'"[13]

**B.        Plaintiffs disclosed Dr. Benson on alleged case-specific injury causation, with seven virtually identical reports whose contents were largely identical to his general-causation report and plaintiffs' complaints.**

On December 11, 2020, the deadline for plaintiffs' expert disclosures on specific causation,[14] plaintiffs again disclosed Dr. Benson by way of seven reports for the now remaining seven bellwether plaintiffs[15] that, as the Court observed, "each include identical content; they do not reference the individual plaintiffs other than on the title page of each report, nor do they reference Riddell."[16] In each report, Dr. Benson purportedly opined:

> 2. It is my opinion that concussive and sub-concussive blows to the head suffered by this Plaintiff while playing tackle football caused mTBI and other brain injuries and symptoms cited by Plaintiff in this case and in the medial [*sic*] records I have reviewed. It is further my opinion that playing football and suffering these blows to the head while wearing a properly designed and engineered football helmet could have reduced the incidence and injuries suffered by these players.
>
> 3. This report covers specific causation between repetitive concussive and sub-concussive football hits, and long-term brain injuries suffered by these Plaintiffs.[17]

---

[12] (*Id.* at 6 (citing Ex. A-2 to the report).)
[13] (*Id.* at 12 (quoting Riddell's Mot. to Strike Dr. Benson at 12, ECF No. 363).)
[14] (Minute Entry (Aug. 18, 2018), ECF No. 358; *also* Mem. Op. at 2 (Apr. 17, 2021) (noting that as of April 2021, the deadline for plaintiffs to designate experts had passed).)
[15] Plaintiffs served an eighth purported specific-causation report for former bellwether plaintiff Todd Bradford, who subsequently dismissed his claims.
[16] (Mem. Op. at 7 (Apr. 17, 2021)); *see also* Decl. of David Duke (attaching plaintiffs' service of Rule 26(a)(2) disclosures for case-specific experts, including Dr. Benson's specific causation reports), Ex. 2.
[17] *See* Dr. Benson Specific-Causation Rep. at 2.

Riddell moved to strike these reports as well, showing they were merely cut and pasted from the general-causation report—and, in turn, from the complaints—and were otherwise deficient.[18] Again, plaintiffs insisted otherwise in Court filings, writing:

- "The uncontested facts and qualified *expert testimony here proves [sic] that each of the bellwether Plaintiffs is suffering brain injuries* caused by years of wearing defective Riddell football helmets."[19]

- "Plaintiffs have produced *a vast quantity of expert testimony*, uncontested factual testimony and other evidence in support of their claims that the use of Riddell helmets is causally linked to mTBI, *all of which is cited and relied upon by Plaintiffs' causation expert Dr. Benson.*"[20]

- "[F]or each Plaintiff, *Dr. Benson opined and concluded unequivocally based on peer-reviewed scientific studies and medical records he reviewed* that (1) there is a causal link between playing football and long-term mTBI; and (2) available better-designed helmets 'could have reduced the incidence and injuries suffered by these players.'"[21]

- "In formulating his opinions, *Dr. Benson relied on various materials*, including peer-reviewed scientific studies that support his opinions, as well as documents and records from doctors at Boston University School of Medicine (which are referenced in the exhibits to Dr. Benson's expert report)."[22]

- "Dr. Benson authored Rule 26-Compliant Reports as to both general and specific causation."[23]

- "Dr. Benson very clearly in his [specific-causation] report identified the opinions he was offering *and his basis and reasons for them*. One of Dr. Benson's key opinions is that head trauma causes CTE, and that *each Plaintiff suffers from various forms of mBTI caused by his years of playing football*. This opinion is confirmed and supported by *numerous scientific, peer-reviewed articles that Dr. Benson specifically reviewed and relied upon, as well as the documents produced in this case and reviewed and relied upon by Dr. Benson.*"[24]

---

[18] (Mot. to Exclude Specific Causation Expert Randall Benson (Dec. 21, 2020), ECF No. 375.)
[19] (Pls.' Opp'n to Defs.' Second Mot. for Summ. J. & Second Mot. to Exclude at 1 (Feb. 1, 2021) (emphasis added), ECF No. 393.)
[20] (*Id.* at 5 (emphasis added).)
[21] (*Id.* at 11 (emphasis added); *also id.* at 4 (same quote, verbatim).)
[22] (*Id.* at 11–12 (emphasis added).) The reference to Boston University (BU) is misplaced and appears to be the result of plaintiffs' counsel confusing this litigation with a different case. None of the bellwether plaintiffs here treated at BU.
[23] (*Id.* at 12.)
[24] (*Id.* at 13 (emphases added).)

- "Hence, Dr. Benson's opinion that head trauma causes CTE (*and did in the case of each Plaintiff*) is much discussed in his report and certainly well supported in the medical literature."[25]

Plaintiffs further misrepresented to the Court that "Dr. Benson identified the data relied on in forming his opinions" in his report, and that "in addition to the facts and data cited in his report," Dr. Benson "also attached an exhibit to his report that identified specific 'documents containing facts and data considered in forming [his] opinions.'"[26] As shown below, however, Dr. Benson's deposition revealed each of these statements above to be blatantly and brazenly false.

At the same time, in opposing summary judgment and Riddell's statement of undisputed facts, plaintiffs made further misrepresentations to the Court. In particular, plaintiffs disputed that Dr. Benson's specific-causation reports were all identical, insisting that "[e]ach Report references each Plaintiff *and is based on Plaintiff-specific material cited by Dr. Benson in his reports.*"[27] Plaintiffs further excused the identicality between the general- and specific-causation reports, arguing that "Dr. Benson reviewed the Master Complaints, and incorporated information from the Complaints—to the extent the information comported with his opinions—but Dr. Benson's reports were not 'identical' to 'iterations of the plaintiffs' master complaints.'"[28]

C.  **Relying on Dr. Benson's report and following plaintiffs' repeated representations about the work Dr. Benson had supposedly done and the opinions he purportedly held, the Court made a finding as to general causation, declined to address the remainder of Riddell's motions, and reinstated the remaining deadlines, including for Riddell's expert disclosures on specific causation.**

The Court agreed with Riddell that given the nature of their claims, the "plaintiffs need expert testimony on general causation," but denied Riddell summary judgment after citing Dr. Benson's general causation report, writing: "Dr. Benson's report is sufficient to permit a

---

[25] (*Id.* (emphasis added).)
[26] (*Id.* at 15.)
[27] (Pls.' L.R. 56.1(b) Resp. to Defs.' Stmt. of Undisp. Material Facts at 8 ¶ 22, ECF No. 395.)
[28] (*Id.* ¶ 23.)

6

reasonable finding that a person may suffer brain injury and/or neurocognitive injuries from playing football."[29] The Court reset the few remaining deadlines (including for Riddell's case-specific expert disclosures) that it had suspended while considering Riddell's motions.[30]

On July 15, 2021, Riddell served its case-specific disclosures, totaling 37 reports with attachments from multiple experts as to each remaining bellwether plaintiff individually.[31]

On August 30, 2021, Riddell deposed Dr. Benson. During his deposition, Dr. Benson revealed that his disclosures here on both general and specific causation, and virtually everything plaintiffs have said in attempting to defend Dr. Benson's purported reports and the merits of their case on causation, have been plagued with falsified evidence, fraud, and misrepresentation.

**D.** **Plaintiffs' counsel served falsified specific-causation reports that Dr. Benson testified were not his, that he had not seen until the day before his deposition, that misrepresented the work he did, and that contained false specific-causation conclusions that he had not formed.**

Contrary to plaintiffs' express representations to Riddell and the Court, Dr. Benson had no involvement whatsoever with his supposed specific-causation reports. In fact, he didn't see those reports until the day before his deposition, nor did he sign them.[32]

Moreover, Dr. Benson revealed that the entire foundation for his purported specific-causation reports—i.e., that he had derived case-specific opinions about each bellwether plaintiff's injuries and symptoms based on his review of case-specific materials including medical records—was fundamentally a fraud. Dr. Benson admitted he has performed no case-specific analysis whatsoever, he has derived no opinions specific to any of the plaintiffs individually, and prior to his deposition, he had not looked at one piece of information specific to any of the remaining

---

[29] (Mem. Op. at 13–14 (Apr. 17, 2021).)
[30] (Minute Entry (May 3, 2021), ECF No. 412.)
[31] *See* Decl. of David Duke (attaching Riddell's case-specific expert disclosures for bellwether plaintiff Greg Page, as an example of the reports Riddell served on all remaining plaintiffs).
[32] Benson Dep. 22:8–19, 26:11–14, 31:7–33:9, 94:21–95:2, 100:13–18.

bellwethers.[33] Rather, he admitted that between the August 26, 2020 deadline for general causation and his deposition on August 30, 2021, he did no work on this matter save for a less-than-10-minute phone call with plaintiffs' counsel, despite the fact that his general-causation report stated that his specific-causation analysis was forthcoming.[34] Thus, when asked, "So as you sit here today you have no specific causation analysis, correct sir?," Dr. Benson confirmed, "That's correct."[35]

Confronted with the purported conclusion in his seven falsified specific-causation reports that "playing tackle football caused mTBI and other brain injuries and symptoms cited by Plaintiff in this case and in the medial [sic] records I have reviewed," Dr. Benson testified that it is "*not a true statement* certainly *because I haven't reviewed any medical records*," and because he otherwise had no information on which to offer any such opinion.[36] He also conceded he did not write the statement.[37] When asked about the next representation—that his December 2020 reports covered "specific causation between repetitive concussive and sub-concussive football hits, and long-term brain injuries suffered by these Plaintiffs"—Dr. Benson confirmed both it and the preceding paragraph (i.e, paragraphs 2 and 3) were "simply not true."[38]

Contrary to the statements in the specific-causation reports that plaintiffs' counsel drafted and served as purportedly being from Dr. Benson, and contrary to plaintiffs' repeated assertions to the Court, Dr. Benson confirmed he has no opinions that any plaintiff has any type of neurological or brain injury.[39] In short, the case-specific reports passed off as Dr. Benson's are nothing less than out and out fraud.

---

[33] *Id.* at 20:16–21:9, 27:11–20, 27:24–28:7, 71:17–24, 92:15–19, 100:7–12.
[34] *Id.* at 45:16–20, 59:6–60:22, 86:20–24, 92:7–14, 93:17–24.
[35] *Id.* at 61:10–12.
[36] *Id.* at 95:12–96:1 (emphasis added).
[37] *Id.* at 95:12–21.
[38] *Id.* at 97:15–17.
[39] *Id.* at 104:10–15, 108:14–16, 113:18–22.

8

**E.     Dr. Benson did not author his general-causation report either; he reviewed it for only a few minutes, changing only a few words and typographical errors, and otherwise contributed "nothing terribly substantial" before providing his signature.**

Unlike his purported specific-causation reports, Dr. Benson did briefly review his report on general causation, albeit, for only a "few" minutes—but he did not draft it; rather, plaintiffs' counsel did.[40] Overall, Dr. Benson did not know how much time he spent reviewing his purported general-causation report—but whatever amount of time he spent was so minimal that he did not record it or bill it to plaintiffs, and he confirmed that his office practice is that if a task takes less than 10 minutes, he does not bill it.[41]

Dr. Benson confirmed the process leading to his general-causation report was that plaintiffs' counsel drafted it, while Dr. Benson corrected a few typographical errors and provided his signature to affix to a separate and otherwise blank page of the report.[42] Beyond that, "there might have been a word here or there" that he changed, but otherwise, Dr. Benson's contributions were "nothing terribly substantial."[43] Indeed, as he compared the general-causation report with the *Mark Adams* complaint here (which he had never previously seen), Dr. Benson confirmed that much of the report was "clearly effectively copied and pasted" from the complaint, and that the content lifted therefrom in his report was "not my writings."[44]

**F.     The attachments to the general- and specific-causation reports listing materials Dr. Benson supposedly "consulted upon" and relied on were likewise falsified.**

Both the general- and specific-causation reports contained attachments that purported to list materials on which Dr. Benson supposedly relied in drafting the reports and arriving at his opinions. In particular, the general-causation report listed as "Documents consulted upon" the

---

[40] *Id.* at 19:3–20:8.
[41] *Id.* at 14:14–15, 19:20–22, 20:3–8, 26:3–10, 38:11–14, 45:3–5.
[42] *Id.* at 24:20–24.
[43] *Id.* at 24:20–25:19.
[44] *Id.* at 76:5–77:25.

9

pleadings in each of the four consolidated cases, "Science Day presentations including articles," 23 articles from plaintiffs' Science Day submissions, and "Plaintiff Fact Sheets."[45] The specific-causation reports listed as "Document consulted upon" the same "Science Day" materials, along with "All Deposition Exhibits for the Bellwether eight plaintiffs."[46]

But Dr. Benson admitted in deposition that plaintiffs' counsel never consulted with him about any pleadings, any Science Day materials, any of the articles his report attachments listed, any deposition exhibits, or any fact sheets, nor did he receive, review, or rely on any of these materials.[47] In fact, Dr. Benson has not seen any plaintiff-specific information for any plaintiffs in this litigation.[48] Nonetheless, plaintiffs' counsel represented the exact opposite in multiple filings with the Court, as detailed above. Indeed, Dr. Benson testified that he had never even seen either of the falsified lists until the time of his deposition, even though plaintiffs had served them on Riddell as "exhibits" attached to Dr. Benson's general- and specific-causation reports.[49]

### G.   Dr. Benson and plaintiffs' counsel knew before the deposition that the specific-causation reports were falsified and fraudulent.

As the facts above show, plaintiffs' counsel long knew that what they passed off as specific-causation reports by Dr. Benson were falsified and fraudulent in multiple respects. Moreover, Dr. Benson testified that when he read the specific-causation reports for the first time the day before his deposition, he was "troubled by" the falsified and untrue statements that he had reviewed medical records and other materials and had performed individualized plaintiff-specific causation

---

[45] (See Ex. A-4 to Defs.' Mot. to Strike (appending general causation report, including materials considered list), ECF No. 363-2, at 45–47.)
[46] (See, e.g., Ex. AA to Pls.' App'x in Supp. of Opp'n to Defs.' Second Mot. for Summ. J. (appending the specific-causation reports materials considered list), ECF No. 394-27, at 25–26.)
[47] Benson Dep. 51:3–11, 51:21–52:16, 81:13–22, 82:9–83:8, 84:19–85:5. Dr. Benson further admitted that he did not even know what a Science Day was. Id. at 52:4–8.
[48] Id. at 82:16–20.
[49] Id. at 81:13–82:8, 82:21–83:8.

analyses, when, in fact, he had done neither.[50] Dr. Benson testified that, the morning of his deposition, he advised Mr. Hamilton of his discomfort with the misrepresentations in his supposed specific-causation reports.[51] Yet, plaintiffs proceeded with the deposition anyway, without disclosing the falsification to Riddell until Riddell's counsel specifically asked about the false conclusions in the reports a couple hours into the deposition.[52]

**H.   Plaintiffs' counsel filed the falsified reports and lists of materials with the Court.**

As shown above, in opposing summary judgment, plaintiffs' counsel made numerous false statements concerning Dr. Benson's work and ultimate opinions here. They mispresented the scope of his role in the general-causation report, which Dr. Benson confirmed as being "nothing terribly substantial."[53] They misrepresented the cut-and-pasted specific-causation reports as being Dr. Benson's authorship, which they knew was a lie since he did not even see them until the day before his deposition—eight months after plaintiffs served them on Riddell and months after plaintiffs relied on them to defend against summary judgment.[54] They serially misrepresented that Dr. Benson had arrived at plaintiff-specific injury causation opinions after analyzing numerous sources of plaintiff-specific information—none of which is even remotely true, as Dr. Benson confirmed.[55]

**I.   Plaintiffs' counsel appears to have misled Dr. Benson as well, telling him he has more time to work up specific-causation opinions, despite that deadline having long since passed and expert discovery having closed. At the same time, plaintiffs' counsel has repeatedly (and falsely) insisted to the Court that Dr. Benson had already done extensive work to deliver well-supported opinions on specific causation.**

As Dr. Benson testified, both Mr. Circelli and Mr. Hamilton (who is neither licensed to practice in Illinois nor admitted *pro hac vice*) assured him that he need not be "troubled" by the

---

[50] *Id*. at 97:23–99:10.
[51] *Id.*
[52] *Id.* at 97:23–99:10
[53] *Id.* at 24:20–25:19.
[54] (Pls.' Opp'n 12–15 (Feb. 1, 2021), ECF No. 393.)
[55] (*E.g.*, *id.*); *also* Benson Dep. 27:11–20.

11

fraudulent specific-causation reports because he was only there to testify as to general causation, and there is still time to perform plaintiff-specific work.[56] If true, this is another material misrepresentation by plaintiffs' counsel—this time, to their own expert.

As plaintiffs well know, expert discovery is over. There was no basis whatsoever for plaintiffs' counsel to have misled Dr. Benson as he testified they did. And at the same time they were telling Dr. Benson he still has time to conduct specific-causation analysis, plaintiffs have been telling the Court that Riddell is all wrong, and that Dr. Benson has supposedly performed extensive work as to specific causation. Yet Dr. Benson confirmed that he has "no specific-causation analysis," and that it is "simply not true" he has developed any case-specific opinions.[57]

## ARGUMENT

"There is no question as to this Court's authority to order the ultimate sanction of dismissal in the face of such egregious conduct—or as to the propriety of doing so."[58] This inherent power to sanction egregious misconduct exists "not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court."[59] As this District has noted, when faced with egregious misconduct, "a court must be mindful of its responsibility to deter future parties from trampling upon the integrity of the court."[60]

As the Seventh Circuit has recognized, "there are species of misconduct that place too high a burden . . . for a court to allow a case to continue," and that instead warrant the sanction of dismissal with prejudice.[61] Among those is fraud on the Court in any form,[62] including

---

[56] Benson Dep. 16:6–13, 97:23–99:10.
[57] *Id.* at 61:10–12, 97:15–97:17.
[58] *Salmeron*, 2008 WL 3876135, at *9–10.
[59] *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009).
[60] *Alexander v. Caraustar Indus., Inc.*, 930 F. Supp. 2d 947, 959 (N.D. Ill. 2013).
[61] *Dotson*, 321 F.3d at 665 (quoting *Barnhill*, 11 F.3d at 1368).
[62] *JFB Hart Coatings, Inc. v. AM Gen. LLC*, 764 F. Supp. 2d 974, 982 (N.D. Ill. 2011) (defining "fraud on the court" as when a party has "set in motion some unconscionable scheme calculated

12

misrepresentations to the Court[63] and falsifying evidence.[64] There is no doubt as to the former justifying dismissal, as "[n]o fraud is more odious than an attempt to subvert the administration of justice."[65] Falsified evidence, meanwhile, warrants dismissal because it "substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation," and the "prejudiced party is forced either to attempt independent corroboration of each submission, at substantial expense of time and money, or to accept the real possibility that those discovery documents submitted by the opposing party are inaccurate."[66]

Conduct warranting dismissal with prejudice occurs "where a party has displayed fault, bad faith, or willfulness."[67] Willful and bad faith conduct is either "intentional or reckless"; meanwhile, fault "does not speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation," and "requires only gross negligence or objectively unreasonable behavior."[68]

The Court's inherent authority "to dismiss a case is not without limitations; rather, it should be used only when there is a record of delay [or] contumacious conduct," and in "deciding what measure of sanctions to impose, the district court should consider the egregiousness of the conduct in question in relation to all aspects of the judicial process."[69] But "the appropriateness of lesser sanctions need not be explored if the circumstances justify imposition of the ultimate penalty— dismissal with prejudice."[70] Moreover, a party should not be heard to complain that its counsels'

---

to interfere with the judicial system's ability to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense").
[63] *E.g.*, *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008).
[64] *Garcia v. Berkshire Life Ins. Co. Of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009).
[65] *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 251 (1944).
[66] *Garcia*, 569 F.3d at 1180.
[67] *Greviskes v. Univs. Rsch. Ass'n, Inc.*, 417 F.3d 752, 758–59 (7th Cir. 2005).
[68] *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000).
[69] *JFB Hart*, 764 F. Supp. 2d at 982 (quoting *Greviskes*, 417 F.3d at 758–59).
[70] *Dotson*, 321 F.3d at 667.

sins should not be visited on it: "Attorneys' actions are imputed to their clients, even when those actions cause substantial harm," and a "litigant bears the risk of errors made by his chosen agent."[71]

Plaintiffs and their counsel have engaged in serial, egregious misconduct, from falsifying evidence and the record, to making numerous material misrepresentations in Court filings and committing fraud on the Court, on Riddell, and even on their own expert. As shown above, the lengthy pattern of abusive misconduct has substantially prejudiced both the Court and Riddell.

For example, the Court long ago forecasted that plaintiffs would "have trouble with specific causation," which Riddell agreed with, predicting they would "not be able to prove specific causation because, among other reasons, their maladies have widely recognized non-football-related causes in the general population."[72] Nonetheless, plaintiffs opposed advancing the issue of causation, which plan the Court adopted, and the parties spent the next 18 months in costly, extended fact discovery on a total nine bellwether plaintiffs (two have since dropped out). When the time came for expert disclosures on specific causation, Riddell showed that the plaintiffs still had nothing. Plaintiffs lashed back, insisting Dr. Benson had done extensive plaintiff-specific work to derive specific-causation opinions as to each remaining bellwether plaintiff—a total and complete falsehood on every level. The result—this litigation persisted on the Court's docket, incurring even more expense for Riddell for their own specific-causation expert disclosures.[73]

Plaintiffs should have come clean at least as far back as July 2020, when it appears they had no expert by the general-causation disclosure deadline and then served an expert report drafted entirely by counsel. They should have come clean in December 2020, when they served fraudulent

---

[71] *Wade v. Soo Line R.R.*, 500 F.3d 559, 564 (7th Cir. 2007).
[72] *See* Science Day Tr. at 56:15–56:22 (Feb. 22, 2019), Ex. 3.
[73] *See Alexander,* 930 F. Supp. 2d at 958 (granting dispositive sanction after observing the defendant had to ferret out the plaintiffs' falsehoods through discovery: "In short, it was costly in terms of discovery, and judicial resources." (internal citation omitted)).

14

disclosures on specific causation. And they certainly should have come clean when faced with Riddell's dispositive motions, to advise the Court and Riddell—consistent with their duties of candor—that they had no expert testimony on specific causation and that Riddell was entitled to summary judgment. Yet at every turn, they persisted in the lie.

The longstanding record of falsified evidence, misrepresentations, and outright fraud is well-documented. The willfulness, bad faith, and intentionality of plaintiffs' actions are undeniable based on the lengthy, serial nature of their misconduct. This is hardly a case of a single misstep or a misguided overestimation of the strength of their case. This is textbook, pattern, abusive misconduct that goes to the very heart of the judicial process, warranting the strongest of sanctions.

## CONCLUSION

There is no reasonable explanation for plaintiffs' and their counsel's actions, nor is there any rationale why those actions should not warrant the dispositive sanction of dismissal of this litigation in its entirety. Indeed, having "trampled on the integrity of the court,"[74] a "litigant who defrauds the court should not be permitted to continue to press his case."[75] For the foregoing reasons, Riddell asks the Court to grant this motion and dismiss this litigation in its entirety with prejudice, along with other relief as requested in the motion and as the Court deems appropriate.

Respectfully submitted,

Dated: September 2, 2021         **BOWMAN AND BROOKE LLP**

By:    */s/ Paul G. Cereghini*
Paul G. Cereghini (*Pro Hac Vice*)
BOWMAN AND BROOKE LLP
2901 North Central Avenue, Suite 1600
Phoenix, AZ 85012
Telephone: (602) 643-2300
Facsimile: (602) 248-0947
paul.cereghini@bowmanandbrooke.com

---

[74] *Dotson*, 321 F.3d at 667.
[75] *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003).

Robert L. Wise
Eden M. Darrell
BOWMAN AND BROOKE LLP
901 East Byrd Street, Suite 1650
Richmond, VA 23219
Telephone: (804) 649-8200
Facsimile: (804) 649-1762
rob.wise@bowmanandbrooke.com
eden.darrell@bowmanandbrooke.com

David J. Duke
BOWMAN AND BROOKE LLP
2901 Via Fortuna Drive, Suite 500
Austin, TX 78746
Telephone: (512) 874-3800
Facsimile: (512) 874-3801
david.duke@bowmanandbrooke.com

Mark H. Boyle
Thomas Cushing
DONOHUE BROWN MATHEWSON &
SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone: (312) 422-0900
Facsimile: (312) 422-0909
mark.boyle@dbmslaw.com
cushing@dbmslaw.com

*Attorneys for the defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2021, the foregoing was filed with the Clerk using the CM/ECF system, which will provide notice to all counsel of record.

>  */s/ Paul G. Cereghini*
> Paul G. Cereghini *(Pro Hac Vice)*
> BOWMAN AND BROOKE LLP
> 2901 North Central Avenue, Suite 1600
> Phoenix, AZ 85012
> Telephone: (602) 643-2300
> Facsimile: (602) 248-0947
> paul.cereghini@bowmanandbrooke.com
>
> Robert L. Wise
> Eden M. Darrell
> BOWMAN AND BROOKE LLP
> 901 East Byrd Street, Suite 1650
> Richmond, VA 23219
> Telephone: (804) 649-8200
> Facsimile: (804) 649-1762
> rob.wise@bowmanandbrooke.com
> eden.darrell@bowmanandbrooke.com
>
> David J. Duke
> BOWMAN AND BROOKE LLP
> 2901 Via Fortuna Drive, Suite 500
> Austin, TX 78746
> Telephone: (512) 874-3800
> Facsimile: (512) 874-3801
> david.duke@bowmanandbrooke.com
>
> Mark H. Boyle
> Thomas Cushing
> DONOHUE BROWN MATHEWSON & SMYTH LLC
> 140 South Dearborn Street, Suite 800
> Chicago, IL 60603
> Telephone: (312) 422-0900
> Facsimile: (312) 422-0909
> mark.boyle@dbmslaw.com
> cushing@dbmslaw.com
>
> *Attorneys for the defendants*