**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FREDDIE ADAMS, et al.,<br>        Plaintiffs,<br><br>v.<br><br>BRG SPORTS, INC., et al.,<br>        Defendants. | Case No.: 1:17-CV-08972 |
| JAMES BRADSHAW, et al.,<br>        Plaintiffs,<br><br>v.<br><br>BRG SPORTS, INC., et al.,<br>        Defendants. | Case No.: 1:18-CV-00129 |
| CORY BRANDON, et al.,<br>        Plaintiffs,<br><br>v.<br><br>BRG SPORTS, INC., et al.,<br>        Defendants. | Case No.: 1:17-CV-08544 |
| JEFFREY JONES, et al.,<br>        Plaintiffs,<br><br>v.<br><br>BRG SPORTS, INC.,<br>        Defendant. | Case No.: 1:18-CV-07250 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' OMNIBUS**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND ......................................................................................2

ARGUMENT .............................................................................................................2

   I.  **With either Dr. Benson or Dr. Motley properly excluded, plaintiffs cannot meet their burden to prove their warnings claims, requiring summary judgment for Riddell.** ............................................................3

  II.  **Beyond the inadmissibility of their experts, plaintiffs further fail to create a triable issue on their warnings claims.** ....................................................5

      A.  **Plaintiffs cannot prove general medical causation—i.e., that playing football can cause their claimed maladies—which negates their claims entirely.** ..........................................................................................6

      B.  **Plaintiffs fail to support any duty to warn.** ................................................12

      C.  **Dr. Motley's subjective, incomplete, and unsupported musings are insufficient to support that Riddell's warnings were inadequate.** ..............17

      D.  **Plaintiffs have no expert testimony on specific causation.** .........................21

**CONCLUSION** ............................................................................................................24

## Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................ 2

*Beardsall v. CVS Pharm., Inc.*,
    953 F.3d 969 (7th Cir. 2020) ........................................................... 25

*Benedict v. Zimmer, Inc.*,
    405 F. Supp. 2d 1026 (N.D. Iowa 2005) ........................................... 3

*Brown Forman Corp. v. Brune*,
    893 S.W.2d 640 (Tex. App. 1994) .............................................. 5, 18

*Campbell v. Delbridge*,
    670 N.W.2d 108 (Iowa 2003) ......................................................... 14

*Cartwright v. Pfizer, Inc.*,
    369 F. Supp. 2d 876 (E.D. Tex. 2005) ........................................... 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (U.S. 1986) .................................................................. 3

*Chrismon v. Brown*,
    246 S.W.3d 102 (Tex. App. 2007) ............................................ 12, 13

*Craig v. Amateur Softball Association of America*,
    951 A.2d 372 (Pa. Super. Ct. 2008) ................................................ 13

*Cripe v. Henkel Corp.*,
    858 F.3d 1110 (7th Cir. 2017) ................................................. 8, 9, 12

*Cummings v. Deere Co.*,
    589 F. Supp. 2d 1108 (S.D. Iowa 2008) ......................................... 18

*Daughetee v. Chr. Hansen, Inc.*,
    960 F. Supp. 2d 849 (N.D. Iowa 2013) ..................................... 16, 22

*DeGrate v. Exec. Imprints, Inc.*,
    261 S.W.3d 402 (Tex. App. 2008) .................................. 20, 22, 23, 24

*Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*,
    299 S.W.3d 374 (Tex. App. 2009) ............................................. 5, 15

*Dunagan v. Coleman*,
    427 S.W.3d 552 (Tex. App. 2014) ................................................... 12

*E.I. du Pont de Nemours & Co. v. Robinson*,
    923 S.W.2d 549 (Tex. 1995) ............................................................ 21

*Feld v. Borkowski*,
    790 N.W.2d 72 (Iowa 2010) ........................................................... 13

*FFE Transp. Servs., Inc. v. Fulgham*,
    154 S.W.3d 84 (Tex. 2004) ............................................................. 14

*Firestone Steel Prods. Co. v. Barajas*,
    927 S.W.2d 608 (Tex. 1996) ............................................................................... 16

*Ford Motor Co. v. Ledesma*,
    242 S.W.3d 32 (Tex. 2007) .................................................................................. 22

*Gerber v. Hoffmann-La Roche, Inc.*,
    392 F. Supp. 2d 907 (S.D. Tex. 2005) ................................................................ 18

*Giles v. Astrue*,
    483 F.3d 483 (7th Cir. 2007) .............................................................................. 22

*Goodyear Tire & Rubber Co. v. Rios*,
    143 S.W.3d 107 (Tex. App. 2004) ............................................................. 3, 18, 23

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
    430 F. Supp. 3d 516 (N.D. Ill. 2019) .................................................................... 2

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
    No. 14 C 1748, 2017 WL 4772759 (N.D. Ill. Oct. 23, 2017) ............................... 3

*In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*,
    218 F. Supp. 3d 700 (N.D. Ill. 2016) .................................................................... 4

*Johnson v. Cambridge Indus., Inc.*,
    325 F.3d 892 (7th Cir. 2003) .............................................................................. 25

*Johnson v. Kroger Co.*,
    No. 3:19-cv-371, 2020 WL 3064709 (N.D. Tex. June 9, 2020) .......................... 19

*Junk v. Terminix Int'l Co. Ltd. P'ship*,
    No. 4:05-cv-608, 2008 WL 5191865 (S.D. Iowa Nov. 3, 2008) ...................... 4, 20

*Kahn v. East Side Union High Sch. Dist.*,
    75 P.3d 30 (Cal. 2003) ....................................................................................... 13

*Korte v. Mead Johnson & Co.*,
    824 F. Supp. 2d 877 (S.D. Iowa 2010) ............................................................... 21

*Lamb v. Manitowoc Co.*,
    570 N.W.2d 65 (Iowa 1997) .......................................................................... 15, 16

*Leonard ex rel. Meyer v. Behrens*,
    601 N.W.2d 76 (Iowa 1999) ............................................................................... 12

*Lewis v. CITGO Petrol. Corp.*,
    561 F.3d 698 (7th Cir. 2009) ................................................................................ 3

*Lozano v. H.D. Indus., Inc.*,
    953 S.W.2d 304 (Tex. App. 1997) ...................................................................... 17

*Mahr v. G.D. Searle & Co.*,
    390 N.E.2d 1214 (Ill. App. Ct. 1979) ................................................................... 7

*Mercer v. Pittway Corp.*,
    616 N.W.2d 602 (Iowa 2000) .................................................................. 15, 16, 22

*Phi Delta Theta Co. v. Moore*,
    10 S.W.3d 658 (Mem.), 661 (Tex. 1999) ............................................ 13

*Ramsey v. Caterpillar Inc.*,
    No. 12-16-00155-CV, 2017 WL 1426793 (Tex. App. Apr. 19, 2017)..................... 5

*Rock v. Smith*,
    985 F. Supp. 2d 1066 (S.D. Iowa 2013) ............................ 18, 22, 23, 24

*Rowson v. Kawasaki Heavy Indus.*,
    866 F. Supp. 1221 (N.D. Iowa 1994)................................................ 18

*Scott v. Dutton-Lainson Co.*,
    774 N.W.2d 501 (Iowa 2009) ........................................................ 6

*Shop Rite Foods, Inc. v. Upjohn Co.*,
    619 S.W.2d 574 (Tex. App. 1981)................................................... 17

*Simmons v. Briggs Equip. Tr.*,
    221 S.W.3d 109 (Tex. App. 2006).................................................. 14

*Sims v. Washex Mach. Corp.*,
    932 S.W.2d 559 (Tex. App. 1995)................................................... 16

*USX Corp. v. Salinas*,
    818 S.W.2d 473 (Tex. App. 1991)........................................ 3, 5, 15, 16

*Wells v. SmithKline Beecham Corp.*,
    601 F.3d 375 (5th Cir. 2010) ...................................................... 10

*Wells v. SmithKline Beecham Corp.*,
    No. 06-cv-126, 2009 WL 564303 (W.D. Tex. Feb. 18, 2009) ..................... passim

*Wessels v. Biomet Orthopedics, LLC*,
    No. 18-cv-97, 2020 WL 3421478 (N.D. Iowa June 22, 2020) .......................... 7

*Wright v. Ford Motor Co.*,
    508 F.3d 263 (5th Cir. 2007) ....................................................... 5

**Other Authorities**

Fed. R. Civ. P. 56(a) ................................................................... 2

Fed. R. Evid. 702 ................................................................. 1, 4, 18

Iowa Civil Jury Instrs............................................................... 6, 22

Ref. Manual on Scientific Evid. 552 (3d ed. 2011) ..................................... 10

Ref. Manual on Scientific Evid. 671 (3d ed. 2011) ..................................... 22

Restatement (Third) of Torts: Products Liability.................................... 17, 19

Texas PJC 71.5........................................................................ 17

# INTRODUCTION

Setting aside the egregious misconduct perpetrated by plaintiffs and their counsel in serving fraudulent expert reports on Riddell and making representations to the Court that their medical-causation expert had substantially participated in this litigation—when it is beyond argument he did not—plaintiffs' claims all fail on the merits. Even if the Court does not dismiss plaintiffs' claims with prejudice for this misconduct (as it should), Riddell is nonetheless entitled to summary judgment on the lone remaining claims for alleged warnings defect.

Per plaintiffs' theory, Riddell's warnings did not inform them that concussions and other repetitive head impacts sustained while playing football could supposedly cause their various alleged maladies, which they claim are attributable to some still unidentified long-term brain injuries. Digging deeper, however, the unidentified "long-term brain injuries" plaintiffs are concerned about are neither "long-term" nor "brain injuries"; rather, they are suing for a constellation of common conditions and symptoms such as headaches, memory loss, depression, unusual confusion, limited ability to concentrate, and more, which they deem their "maladies." So, plaintiffs' theory on their warnings claims boils down to the assertion that had Riddell informed them that playing football could cause their maladies, that would have made a difference because plaintiffs would have done something different and thereby avoided developing said maladies.

Plaintiffs' ability to prove this theory, however, runs headlong into myriad problems. For one, they need expert testimony to prove several essential elements of their claims. But neither of their two experts—Dr. Motley and Dr. Benson—can pass Rule 702 muster. And without testimony from either (and even without one of them), plaintiffs cannot meet their burden of proof.

Additionally, beyond the fundamental failure to present admissible expert evidence on the essential elements of their claims, plaintiffs further lack crucial evidence on their burden to create a triable issue on their lone remaining claims for alleged warnings defect. For example, plaintiffs

must show that the risk they complain of—i.e., their maladies—can be caused by the product (i.e., a design claim, which is out) or its use: in this case, at base, by playing football. But plaintiffs have no competent evidence that playing football can cause their maladies. Plaintiffs also lack the requisite expert testimony to meet the other various elements of their warnings claims, such as the foreseeability of the alleged risk (meaning Riddell had no duty to warn), the adequacy of the warnings Riddell actually provided, and specific causation both in terms of specific medical causation *and* warnings causation (i.e., that an adequate warning would have made a difference to each individual plaintiff). Without such evidence, plaintiffs cannot prevail on their warnings claims. Summary judgment for Riddell is therefore required.[1]

## FACTUAL BACKGROUND

*See* Riddell's concurrently filed Local Rule 56.1(a)(2) Statement of Material Facts.[2]

## ARGUMENT

Summary judgment is proper when no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law.[3] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4] "When ruling on a motion for summary judgment, a court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor."[5] Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

---

[1] Riddell is also moving for summary judgment on various grounds individually as to each of the remaining bellwether plaintiffs, separate from this omnibus motion that applies to all plaintiffs.

[2] Factual citations in this brief will be to the corresponding material statement of fact (SOF) and will appear in the form "SOF No. __", along with parenthetical pincites as appropriate.

[3] Fed. R. Civ. P. 56(a).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 430 F. Supp. 3d 516, 526 (N.D. Ill. 2019) (Kennelly, J.).

essential to that party's case, and on which that party will bear the burden of proof at trial."[6]

The Court already granted summary judgment for Riddell on plaintiffs' design defect claims, leaving only their warnings claims remaining.[7] Yet those claims fail on multiple levels. For the reasons below, the Court should grant Riddell summary judgment and end this litigation.

**I.      With either Dr. Benson or Dr. Motley properly excluded, plaintiffs cannot meet their burden to prove their warnings claims, requiring summary judgment for Riddell.**

As the Seventh Circuit has held, it is "entirely proper" for a district court to "determine the admissibility of the plaintiffs' expert testimony at the same time that it decide[s] the defendants' motion for summary judgment."[8] This Court has done just that in a products liability case— explaining that where "an element of a plaintiff's claim must be established by expert testimony, a court may properly grant summary judgment if it determines that the only expert testimony offered to prove that element is inadmissible," and ruling that because the plaintiff lacked the necessary expert testimony, he "cannot succeed on any of his claims."[9]

Here, the laws of both Texas and Iowa[10] require expert testimony when the subject matter at issue is beyond the common knowledge and experience of jurors, and this applies to the elements of plaintiffs' warnings claims,[11] including the need for expert testimony on the medical cause of

---

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (U.S. 1986).
[7] (Mem. Op. & Order 14 (Apr. 17, 2021), ECF No. 409.) Moreover, although Texas courts sometimes refer to a warnings claim as a "marketing defect claim," there is no difference. *E.g.*, *USX Corp. v. Salinas*, 818 S.W.2d 473, 482–83 (Tex. App. 1991).
[8] *Lewis v. CITGO Petrol. Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).
[9] *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, 2017 WL 4772759, at *6, *8 (N.D. Ill. Oct. 23, 2017) (Kennelly, J.).
[10] (*See, e.g.*, Mem. Op. 8, ECF No. 409.)
[11] *E.g.*, *Benedict v. Zimmer, Inc.*, 405 F. Supp. 2d 1026, 1033 (N.D. Iowa 2005) (explaining, in a medical device case, that "the average juror needs the assistance of expert testimony to reach an intelligent decision" regarding a warnings claim); *Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107, 117–18 (Tex. App. 2004) (stating, in the context of a warnings claim, that when "a lay person's general experience and common sense will not enable that person to determine the issue, expert testimony is required").

plaintiffs' alleged maladies.[12] So, plaintiffs must have expert testimony establishing that they are in fact injured, and that playing football can *and did* cause these injuries, as well as that Riddell failed to provide adequate warnings, and that such failure caused their injuries.

Riddell concurrently filed two Rule 702 motions to exclude plaintiffs' only two designated experts: Dr. Benson on medical causation, and Dr. Motley on warnings. The Court should grant both motions. If it grants both—or even just one—Riddell is entitled to summary judgment.

With Dr. Benson properly excluded, plaintiffs have no expert testimony to prove both general medical causation (that playing football can cause the types of maladies they allege) and specific medical causation (that playing football *did in fact* cause the specific injuries and maladies each plaintiff alleges). Dr. Benson's exclusion also affects elements of the warnings claims, most notably plaintiffs' ability to show that development of their maladies from playing football was foreseeable, a showing necessary to trigger any duty to warn. And with Dr. Motley properly excluded, plaintiffs would have no expert testimony for other essential elements of their warnings claims, including the only element he purports to address—the warnings' adequacy.[13]

In either scenario, or if the Court grants both motions as it should, plaintiffs will be without required expert testimony and therefore unable to meet their burden of proof on their warnings claims, thereby necessitating summary judgment for Riddell.[14]

_____

[12] (Mem. Op. 13 (explaining that "the origin of the plaintiffs' injuries is not the sort of matter that would be obvious to a layperson"), ECF No. 409.)

[13] (*Id.* at 13–14 (dismissing design defect claims because of lack of expert testimony).)

[14] *E.g.*, *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 218 F. Supp. 3d 700, 721 (N.D. Ill. 2016) ("It also follows, therefore, that if an element of a claim requires expert testimony and that expert testimony is inadmissible under *Daubert*, the court must grant summary judgment on that claim."); *Junk v. Terminix Int'l Co. Ltd. P'ship*, No. 4:05-cv-608, 2008 WL 5191865, at *6–7 (S.D. Iowa Nov. 3, 2008) ("The Court finds that expert testimony is necessary in Junk's claim for inadequate warnings and instructions because it involves 'technical issues' that are beyond the common knowledge and experience of jurors," and because the plaintiff provided no such expert testimony, she "failed to generate a jury issue for trial on her claim for inadequate warnings and

## II. Beyond the inadmissibility of their experts, plaintiffs further fail to create a triable issue on their warnings claims.

The Court previously resolved that Texas and Iowa law govern as to the seven bellwether plaintiffs' claims.[15] In particular, Texas law governs as to six: Green, Johnson, Page, Sterns, Whitby, and Whitehorn. These plaintiffs bring their warnings claim under theories of both strict liability and negligence.[16] For these plaintiffs to prevail, they must prove, by a preponderance of the evidence: 1) a risk of harm that is inherent in Riddell football helmets or that may arise from the intended or reasonably anticipated use of Riddell football helmets; 2) that Riddell must have actually known or could have reasonably foreseen the risk of harm at the time the helmets were marketed; 3) that Riddell football helmets possessed a marketing defect; 4) that the absence of an adequate warning rendered Riddell football helmets unreasonably dangerous to plaintiffs; and 5) that Riddell's failure to warn was a causative nexus in plaintiffs' claimed injuries.[17] In essence, a warnings claim in Texas focuses "on whether the product's risks were reasonably foreseeable by the manufacturer or seller at the time of manufacture, whether the lack of warnings or instructions created an unreasonable danger, [ ] whether the warnings given, if any, were adequate," and whether the alleged failure to warn caused the plaintiff's claimed injuries.[18]

Iowa law, meanwhile, governs as to Wodka. Although he asserts his warnings claim under

---

instructions," making summary judgment for the defendants proper.); *Ramsey v. Caterpillar Inc.*, No. 12-16-00155-CV, 2017 WL 1426793, at *3 (Tex. App. Apr. 19, 2017) (finding summary judgment proper when the plaintiffs failed to present admissible expert testimony regarding the elements of their failure-to-warn claim).

[15] (*See, e.g.*, Mem. Op. 8, ECF No. 409.)

[16] *E.g.*, *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 383–85 (Tex. App. 2009) (explaining that warnings claims can proceed under negligence and strict liability theories).

[17] *See, e.g.*, *Wright v. Ford Motor Co.*, 508 F.3d 263, 274–75 (5th Cir. 2007); *USX Corp. v. Salinas*, 818 S.W.2d 473, 482–83 (Tex. App. 1991).

[18] *Brown Forman Corp. v. Brune*, 893 S.W.2d 640, 644 (Tex. App. 1994).

strict liability and negligence, Iowa law does not permit the former.[19] Thus, Wodka must prove seven elements: 1) that Riddell sold or distributed his football helmet(s); 2) that Riddell was engaged in the business of selling or distributing football helmets; 3) at least one or more ways that Riddell could have reduced or avoided the foreseeable risks of harm posed by its football helmets by providing reasonable instructions or warnings; 4) that the omission of such instructions or warnings rendered Riddell football helmets not reasonably safe; 5) that the risk to be addressed by such instructions or warnings was not obvious to, or generally known by, foreseeable product users; 6) that Riddell's omission of such instructions or warnings caused Wodka's damages, i.e., his claimed maladies; and 7) the amount of damages.[20]

Again, both Iowa and Texas law require expert testimony for these warnings claims, which the plaintiffs all lack given the inadmissibility of the testimony from their lone experts Drs. Benson and Motley. Beyond that, however, their claims all fail on multiple other levels.

### A. Plaintiffs cannot prove general medical causation—i.e., that playing football can cause their claimed maladies—which negates their claims entirely.

In both Texas and Iowa, to prevail on a warnings claim—as with all product liability actions—a plaintiff must prove both that use of the product *can* cause the injuries alleged and that it did in fact cause the alleged injuries. In Texas, an "implicit element of a failure-to-warn claim is that the product is *capable* of causing the plaintiff's injury in the first instance."[21] Although "the elements of a failure-to-warn claim do not explicitly mention cause-in-fact, including general and specific causation," this is "because in many failure-to-warn cases there is no question that the

---

[19] *E.g.*, *Scott v. Dutton-Lainson Co.*, 774 N.W.2d 501, 504 (Iowa 2009) ("Failure to warn claims cannot be brought under a theory of strict liability.").
[20] *See* Iowa Civil Jury Instrs. No. 1000.3 (Dec. 2017).
[21] *Wells v. SmithKline Beecham Corp.*, No. 06-cv-126, 2009 WL 564303, at *5 (W.D. Tex. Feb. 18, 2009).

product is capable of causing the injury suffered by the plaintiff."[22] Similarly, in Iowa, a "failure-to-warn claim requires proof of two types of causation: that the product caused the plaintiff's injuries . . . and that the lack of adequate warning was the proximate cause of the plaintiff's injury."[23] So, even to get to an evaluation of the warnings provided with a product, a plaintiff first must prove that use of the product can cause the injury alleged.[24]

Here, plaintiffs cannot prove the threshold requirement of general medical causation. To be sure, plaintiffs' theory is somewhat different than the typical products liability case. Unlike, say, ingestion of a pharmaceutical or contact with a toxin where direct exposure to the product can allegedly result in the claimed injury, plaintiffs don't allege they developed their maladies simply by donning a football helmet. Rather, the crux of their claims is that Riddell failed to warn them about risks of head and brain injuries inherent in the sport of football itself which, they allege, led to the development of long-term injuries that later manifested in their claimed maladies.[25] It is this attenuated causal chain they allege Riddell failed to warn them about—i.e., that, in general, playing football can lead to maladies they assert result from long-term brain injuries.

As the Court explained, the first aspect of the general-causation inquiry is proving there is reliable science that supports "the proposition that you can even get these types of injuries from playing football with or without a helmet no matter what kind of helmet it is."[26] Riddell previously

---

[22] *Id.* at *5 n.6 (collecting examples of warnings cases where there is no question that product can cause harm alleged, e.g., that a vehicle rolling over on a child can cause the child's death).

[23] *Wessels v. Biomet Orthopedics, LLC*, No. 18-cv-97, 2020 WL 3421478, at *14 (N.D. Iowa June 22, 2020) (internal quotations and alterations omitted).

[24] *See, e.g.*, *Mahr v. G.D. Searle & Co.*, 390 N.E.2d 1214, 1230 (Ill. App. Ct. 1979) (applying Texas law and explaining that "a prerequisite to the duty to warn is proof" of general medical causation, only after which is "it proper to submit the adequacy of [the defendant's] warnings to scrutiny").

[25] *See* SOF No. 1.

[26] SOF No. 4.

addressed plaintiffs' failings on this front.[27] Relying on what plaintiffs represented was a proper expert designation, the Court wrote that "Dr. Benson's report is sufficient to permit a reasonable finding that a person may suffer brain and/or neurocognitive injuries from playing football."[28]

Dr. Benson's admissions in his recent deposition reveal, however, that he didn't author that purported general-causation report—plaintiffs' counsel did, as Riddell has shown.[29] In fact, Dr. Benson admitted he performed no work towards generating the report he only briefly reviewed, and his contributions to it were merely to change a few words and correct some "typos"—overall, "nothing terribly substantial."[30] Moreover, plaintiffs' recent attempt to defend Dr. Benson and avoid terminating sanctions, in which they impeach their own witness and label his testimony throughout his over six-hour deposition as "confused" and "mistaken" only further reveals Dr. Benson as wholly unreliable. Given plaintiffs' flagrant misrepresentation about the general-causation report on which the Court relied, as well as Dr. Benson's manifest unreliability, the Court should vacate that portion of its ruling and conclude that plaintiffs have failed to present any reliable expert testimony to support general medical causation.

With no proper evidence to support general medical causation, plaintiffs cannot carry their burden to show there is anything Riddell owed a duty to warn about, and thus, there is no need to evaluate the adequacy of Riddell's warnings vis-à-vis plaintiffs' maladies. Indeed, this is precisely what the Seventh Circuit considered in *Cripe*, where the plaintiff "was exposed to fumes from PUR-FECT LOK® 834A, a glue made by Henkel Corp. . . . containing methylene diphenyl

---

[27] (*See* Mem. in Supp. of Defs.' Mot. for Summ. J. 7 (Nov. 19, 2020), ECF No. 367; *also* Mem. Op. 14–15 (identifying design-defect causation and warnings-defect causation, but not addressing general medical causation), ECF No. 409.)

[28] (Mem. Op. 13–14, ECF No. 409.)

[29] (Defs.' Mem. in Supp. of Mot. for Terminating Sanctions 9 (Sept. 2, 2021), ECF No. 418.)

[30] (*Id.*)

diisocyanate (MDI)." The plaintiff there argued "that exposure to MDI [through his use of the glue] had caused both neurological and psychological problems, which could have been prevented if the adhesive had better warnings." But the plaintiff failed to prove that MDI could cause his ailments in the first instance, i.e., he failed to prove general medical causation. As the Seventh Circuit reasoned in affirming summary judgment, since the plaintiff could not prove that the MDI in the glue could even cause his alleged injuries, the product "did not play a role" in his injuries, and "the adequacy of the warnings . . . could not matter."[31]

A similar outcome occurred in a district court case in Texas. In *Wells*, the plaintiff alleged the defendant "could reasonably foresee that Parkinson's patients using Requip could develop an irresistible gambling compulsion as a side effect of taking the drug but failed to warn the public or physicians as to such possible side effects, which was negligence because it rendered Requip unreasonably dangerous and was a causative nexus of Wells's gambling losses." The court explained that to prevail, the plaintiff "must therefore prove that exposure to Requip more likely than not caused his pathological gambling." None of the plaintiff's three expert witnesses, however, went so far as to opine as to *causation* between Requip and pathological gambling; rather, they merely hypothesized about a potential *association*. So, the *Wells* court concluded that even with the expert's testimony, "Wells cannot prevail on his failure-to-warn claim without proving general causation," and because he had no expert evidence to prove general medical causation, "no issue remains for trial." Therefore, summary judgment for the defendant was proper.[32] The Fifth Circuit affirmed the experts' exclusion, explaining they did nothing "more than baldly state that Requip can cause problem gambling," and held that without expert testimony, the

---

[31] *Cripe v. Henkel Corp.*, 858 F.3d 1110, 1111–13 (7th Cir. 2017).
[32] *Wells*, 2009 WL 564303 at *4–5, *8–12.

plaintiff "cannot prove general causation—and judgment must be entered for GSK."[33]

With Dr. Benson's "report" properly disregarded, it is indisputable that plaintiffs have *no* evidence whatsoever on general medical causation. But even considering the bogus report, it adds nothing beyond the allegations in plaintiffs' complaint.[34] Those lawyer-crafted allegations, meanwhile, primarily focus on conditions—such as CTE, SIS, and PCS—that *no* plaintiff claims to have.[35] Beyond that, the report merely asserts that "playing football" is "*linked to* significant risk of permanent brain injury" that "triggers progressive degeneration of the brain tissue."[36] The report thus fails to show general medical causation on two levels.

*First*, plaintiffs have not identified any permanent brain injury they allegedly sustained or developed—instead, they have alleged merely a host of "maladies," e.g., depression, memory loss, headaches, impaired judgment, unusual confusion, unusual aggression, unusual inability to multitask, and the like. But these claimed maladies are not proof of any supposed brain injuries.

*Second*, at both steps in the purported chain, the report asserts only a nebulous link or association: "that concussive and sub-concussive head impacts while playing football are *linked* to significant risk of permanent brain injury," and that the resulting "brain degeneration" is "*associated with*" various conditions.[37] But mere links and associations, by themselves, do not equal *causation*.[38] Deficient and improper as it is in numerous other respects, then, the general-causation report does not assert even the most basic conclusion plaintiffs need on this issue, i.e.,

---

[33] *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379, 381 (5th Cir. 2010).

[34] SOF Nos. 10–12.

[35] *E.g.*, Pls.' Gen. Causation Rep. ¶¶ 19–25.

[36] *Id.* ¶ 28.

[37] *Id.*

[38] *Wells*, 2009 WL 564303, at *12; Ref. Manual on Scientific Evid. 552 (3d ed. 2011) ("[I]t should be emphasized that *an association is not equivalent to causation*." (emphasis in original)).

that playing football can *cause* their claimed maladies.[39] This is not surprising considering that before he lent his signature to the attorney-crafted general-causation report, Dr. Benson had never read the complaints or any discovery, nor had he received or read any other information concerning what maladies the plaintiffs were claiming.[40]

Conversely, Riddell designated two expert witnesses on general causation—Dr. Langer and Dr. Randolph—who evaluated plaintiffs' allegations and claims vis-à-vis the available science and reliably concluded there is *no* established scientific causal connection between playing football and plaintiffs' claimed maladies. Riddell refers to these reports not to engage in a battle of experts, but instead to show what a reliable methodology for evaluating general causation entails, and that the *only* competent evidence on this issue is that general causation is lacking.

For example, Dr. Langer identified the pertinent scientific evidence, evaluated it through the "Bradford Hill methodology for assessing causality," and concluded that the "epidemiological evidence does not support a causal association between . . . playing football and the health issues described by plaintiffs."[41] Even more broadly, Dr. Langer explained that various panels of experts have "uniformly opined that there is inadequate scientific support for a causal association between participation in sports and negative later life cognitive/behavioral outcomes."[42]

Similarly, Dr. Randolph opined that there "are no credible data to suggest that concussions, or exposure to repetitive head trauma from contact sports, results in any long-lasting or permanent neurological or psychiatric condition."[43] Indeed, he explained that although the short-term outcomes and recovery from concussion are "extremely well understood," the effects are just that,

---

[39] SOF No. 13.
[40] SOF Nos. 6, 8, 9–12; *also* SOF No. 16.
[41] SOF No. 14 (Dr. Langer Rep. 7.)
[42] SOF No. 14 (Dr. Langer Rep. 9).
[43] SOF No. 14 (Dr. Randolph Rep. 2).

short term—no relevant study "has found a significant difference between concussed players and controls . . . 30-45 days post injury."[44] Moreover, he explained there are "no properly controlled studies in the medical literature to date that have identified any long-term or late-life neurological consequences of exposure to contact sports or sport-related concussion."[45] Both Dr. Randolph and Dr. Langer noted how plaintiffs' maladies are extremely common in the general population and are attributable to other conditions wholly unrelated to concussion and playing football.[46] Plaintiffs have not deposed either Dr. Langer or Dr. Randolph, nor any of Riddell's other disclosed experts.

At the summary judgment stage, a plaintiff "can't beat something with nothing."[47] With discovery closed and expert disclosures long since passed, Riddell has presented competent, reliable expert evidence on the lack of any valid, scientific general causation between playing football and plaintiffs' maladies. Plaintiffs, meanwhile, have come with nothing—nothing except vague and insufficient attorney-crafted allegations from their complaint that they misrepresented to the Court as their expert's work. With nothing to support general medical causation, plaintiffs' lone remaining warnings claims fail, requiring summary judgment for Riddell.[48]

## B. Plaintiffs fail to support any duty to warn.

Plaintiffs' warnings claims fail to establish a duty to warn on multiple levels.

***No cognizable legal duty to warn on Riddell's part as asserted.*** Plaintiffs' warnings claims require them to identify a recognized duty to warn of a risk that is not merely inherent in football. Indeed, both Texas and Iowa law acknowledge this fundamental precept.[49] At the outset, plaintiffs'

---

[44] SOF No. 14 (Dr. Randolph Rep. 2–3).
[45] SOF No. 14 (Dr. Randolph Rep. 3).
[46] SOF No. 15. Dr. Benson does not disagree, either. *Id.*
[47] *Cripe*, 858 F.3d at 1113.
[48] *See id.*; *Wells*, 2009 WL 564303 at *4–5, *8–12.
[49] *E.g.*, *Dunagan v. Coleman*, 427 S.W.3d 552, 557 (Tex. App. 2014) (explaining that "there is no duty of ordinary care" for risks inherent to a sport); *Chrismon v. Brown*, 246 S.W.3d 102, 111–12 (Tex. App. 2007); *Leonard ex rel. Meyer v. Behrens*, 601 N.W.2d 76, 79 (Iowa 1999) (per curiam).

claims fail because they cannot identify any such legally recognized duty to warn.

*First*, as courts have recognized, a duty to warn focuses on the risk itself as opposed to the allegedly resulting injury. For example, in *Craig v. Amateur Softball Association of America*, the amateur softball player-plaintiff argued that the defendant softball organization should be liable for not warning him of "the risk of being struck in the head without wearing a helmet by a ball while running the bases, thrown with such force that [one's] skull becomes crushed." But as the appellate court observed, this "argument confuse[d] the concepts of risk and result. The risk at issue in this matter is being struck by an errant softball; the risk is not the injuries that resulted from being struck."[50] Similarly, the relevant "risk" here is that of sustaining a head impact or injury while playing football, not the purported long-term brain injuries manifesting in the plaintiffs' claimed maladies allegedly resulting from those head impacts. And Riddell *did* warn of the risk of head impacts/injuries. Moreover, this leads to the next failing in plaintiffs' claims.

*Second*, the risk of head impacts/injuries from playing football is patently obvious and inherent to the sport of football, and that risk cannot be eliminated without fundamentally changing the nature of the sport—nor is that risk something that Riddell, as a helmet manufacturer and not a football-sponsoring league or rulemaking body, could change.[51] Indeed, plaintiffs' retained witness on warnings, Dr. Motley, confirmed multiple times at his deposition that the risk of head injury is inherent in football: "Q. You understand that even wearing a helmet, that there can be impacts to the head, obviously, correct? A. Sure, yes. Q. And you understand that those impacts

---

[50] 951 A.2d 372, 375–76 (Pa. Super. Ct. 2008).

[51] *See Phi Delta Theta Co. v. Moore*, 10 S.W.3d 658 (Mem.), 661 (Tex. 1999) (dissenting from denial of review petition and explaining that public policy disfavors imposing liability for risks inherent in a sport that cannot be eliminated); *Chrismon*, 246 S.W.3d at 111–12 (adopting standard in *Moore*); *also Kahn v. East Side Union High Sch. Dist.*, 75 P.3d 30, 38 (Cal. 2003) ("[D]efendants generally do not have a duty to . . . eliminate risk from the sport."); *Feld v. Borkowski*, 790 N.W.2d 72, 88 (Iowa 2010) (concurring in part & dissenting in part) (citing *Kahn* for the same).

are inherent to the game of football? A. Yes."[52] He further acknowledged those risks, including injuries to the head as well as any other part of the body, are "fairly common knowledge."[53] The only way to remove those inherent risks would be to eliminate all contact and all opportunities for contact—rendering football unrecognizable—or else, according to Dr. Motley, "to not participate in football."[54] Given the inherent nature of the risks at issue (i.e., head/brain injury resulting from head impacts while playing football), there is no legally recognized duty to warn—certainly not of anything beyond what Riddell already warned. The warnings claims thus falter at the threshold.

***No expert testimony establishing standard of care.*** Where, as here, plaintiffs' warnings claims under a negligence theory allege a duty to warn regarding issues outside the contemplation and understanding of a layperson, they must employ expert testimony to establish both the standard of care and violation of said standard.[55] For example, in a case where the plaintiff alleged a failure to warn of dangers regarding refrigeration equipment that became rusty and loose, the court explained that although "the ordinary person may be able to detect whether a visible bolt is loose or rusty, determining when that looseness or rust is sufficient to create a danger requires specialized knowledge" and thus expert testimony regarding the standard of care.[56]

Here, determining what role Riddell occupied in a given plaintiff's multi-faceted network of individuals and entities related to player safety (e.g., the player himself, parents, coaches, trainers, schools, primary care providers, etc.) clearly requires specialized knowledge outside the layperson's grasp. Yet Dr. Motley expressly disavowed holding any opinion regarding Riddell's

---

[52] SOF No. 29 (Motley Dep. 76:25–77:6; *also id.* at 73:18–74:11, 76:5–8, 77:13–19).
[53] SOF No. 29 (Motley Dep. 132:4–18).
[54] SOF No. 29 (Motley Dep. 134:1–135:7).
[55] *E.g., Simmons v. Briggs Equip. Tr.*, 221 S.W.3d 109, 114 (Tex. App. 2006); *Campbell v. Delbridge*, 670 N.W.2d 108, 110 (Iowa 2003).
[56] *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 91 (Tex. 2004).

duty to warn.[57] Moreover, he was wholly unfamiliar with the actual industry standards for football helmet warnings. And nowhere in his reports does he even attempt to address any applicable standard of care that Riddell violated. Meanwhile, the subjective opinions that Dr. Motley does espouse are not practical to implement—e.g., changing the warnings to remove NOCSAE-required content or moving the location of the warning labels—given that they would run afoul of governing standards and regulations. In short, none of plaintiffs' proffered expert testimony comes close to supporting a deviation from any applicable standard of care when it comes to fulfilling any supposed duty to warn. Without it, the warnings claims further fail.

**No expert testimony regarding foreseeability of claimed maladies.** Plaintiffs' theory is that Riddell owed a duty to warn of the potential for developing their alleged maladies from long-term brain injuries—i.e., a result, not an actual risk. But putting aside the fundamental miscue that Riddell had no duty to warn of alleged results from a risk, nor of actual risks inherent in football, plaintiffs' theory further dissolves because, even following their theory, they lack any competent proof of foreseeability—at the time Riddell marketed the helmets they claim to have worn—of their claimed maladies resulting from playing football, which both Texas and Iowa require. In other words, they cannot prove that Riddell actually knew of, or was reasonably able to ascertain, a foreseeable risk of harm at the time the helmets were marketed.[58] Indeed, it is the "reasonable foreseeability of danger to users of a product [that] triggers the duty to warn."[59]

In determining whether the alleged harm is foreseeable, both states hold manufacturers to the status of an expert in their field and assume they possess the latest pertinent scientific

---

[57] SOF No. 25.

[58] *E.g.*, *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 623–24 (Iowa 2000); *Dewayne Rogers Logging*, 299 S.W.3d at 384.

[59] *Lamb v. Manitowoc Co.*, 570 N.W.2d 65, 68 (Iowa 1997); *also Salinas*, 818 S.W.2d at 483.

knowledge.[60] Whether a duty to warn existed at a specific point in time is a question of law for the Court.[61] So, unless plaintiffs can prove—with competent evidence—that the maladies they complain of were foreseeable based on the scientific knowledge *at the time their helmets were marketed*, plaintiffs cannot prove a duty to warn of such maladies and their warnings claims fail.[62]

In Texas, a plaintiff can prove the foreseeability in several ways: "(1) evidence of similar accidents or other complaints; (2) presentation of post-accident warnings; (3) presentation of recall letters; (4) evidence of governmental standards; (5) expert testimony, lay testimony, or documentary evidence to show information about risks available to defendant; and (6) reliance on well-established presumptions"—that said, a "duty to warn is often established by expert testimony regarding the nature of the product and the foreseeability of the danger."[63] Iowa is similar.[64]

Case law from both Texas and Iowa demonstrates the level of evidence a plaintiff must present to show foreseeability sufficient to support a duty to warn—none of which plaintiffs have come close to marshalling.[65] Chiefly, they lack any competent, reliable expert testimony as to alleged foreseeability of their maladies—much less anything with respect to when any helmets the

---

[60] *E.g.*, *Mercer*, 616 N.W.2d at 624; *Salinas*, 818 S.W.2d at 484.

[61] *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996); *Daughetee v. Chr. Hansen, Inc.*, 960 F. Supp. 2d 849, 864 (N.D. Iowa 2013). Although *Daughetee* correctly concluded that duty is a question of law, it incorrectly divorced the concept of foreseeability from duty. The cases *Daughetee* relied on considered foreseeability in a general negligence context, not a product-liability warnings claim context where foreseeability is inextricably intertwined with duty to warn. *See* 960 F. Supp. 2d at 865.

[62] *Daughetee*, 960 F. Supp. 2d at 867; *Salinas*, 818 S.W.2d at 483–84.

[63] *Salinas*, 818 S.W.2d at 484.

[64] *E.g.*, *Daughetee*, 960 F. Supp. 2d at 867–69 (identifying available science and other industry events revealing similar complaints); *Lamb*, 570 N.W.2d at 69 (identifying similar incidents).

[65] *E.g.*, *Sims v. Washex Mach. Corp.*, 932 S.W.2d 559, 561–63 (Tex. App. 1995) (finding presentation of post-accident warnings, when no warnings accompanied the machine before the accident, and evidence of governmental standards sufficient to demonstrate foreseeability); *Daughetee*, 960 F. Supp. 2d at 852–54, 864–69 (identifying several examples—such as formal industry reports, similar incidents, and more—that demonstrated foreseeability).

plaintiffs purportedly wore were marketed. The record is also devoid of any evidence as to what Riddell supposedly knew or should have known as to the alleged development of plaintiffs' claimed maladies from playing football. Indeed, plaintiffs have no science to support foreseeability *even now*, in 2021, let alone that development of such conditions was foreseeable when they each played—as far back as 1985 for Wodka, and as recently as 2017 for Johnson.[66] The ersatz medical-causation reports certainly don't address this key issue. Nor does their other expert, Dr. Motley, who stated unequivocally he is not a medical expert—and thus lacks qualifications to opine as to what was known when—and that he was not offering any opinion on duty to warn.[67] And plaintiffs lack any other competent evidence to support foreseeability. The warnings claim thus further fails.

## C. Dr. Motley's subjective, incomplete, and unsupported musings are insufficient to support that Riddell's warnings were inadequate.

An adequate warning in Texas is one "given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use," and "the content of the warning must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it in the mind of a reasonably prudent person."[68] When it is required, then, "a warning must be: designed so that it can reasonably be expected to catch the attention of the consumer; comprehensible and give a fair indication of the specific risks involved with the product; and of an intensity justified by the magnitude of the risk."[69] Iowa has similar requirements, explaining that factors "to consider when assessing the adequacy of instructions or warnings are content and comprehensibility, intensity of expression,

---

[66] *Cartwright v. Pfizer, Inc.*, 369 F. Supp. 2d 876, 886 (E.D. Tex. 2005) ("It is clear that Texas state law does not require manufacturers to issue warnings that are 'scientifically unsupported.'"); Restatement (Third) of Torts: Products Liability § 2 cmt. m ("Unforeseeable risks arising from foreseeable product use or consumption by definition cannot specifically be warned against.").

[67] SOF Nos. 25 (not opining on duty to warn), 26 (not a medical expert).

[68] Texas PJC 71.5; *Shop Rite Foods, Inc. v. Upjohn Co.*, 619 S.W.2d 574, 578 (Tex. App. 1981).

[69] *Lozano v. H.D. Indus., Inc.*, 953 S.W.2d 304, 314 (Tex. App. 1997).

and the characteristics of expected user groups."[70] In both states, the absence of an adequate

warning must render a product unreasonably dangerous for it to be considered defective.[71]

Whether a warning is adequate is generally a jury question.[72] But because evaluating the

adequacy of a football helmet warning in terms of both content and form involves technical issues

outside the ken of the ordinary juror, plaintiffs still must have competent, reliable expert testimony

on the adequacy of Riddell's warnings for the issue to be properly submitted to the jury.[73]

As Riddell shows in its accompanying motions, the Court should exclude plaintiffs'

warnings expert Dr. Motley outright under Rule 702. But even with him, Dr. Motley's off-hand,

subjective musings fail to support plaintiffs' burden under the governing law to show that Riddell's

warnings were inadequate and rendered the helmets unreasonably dangerous.

For one, Dr. Motley offered subjective hypotheses divorced from the relevant standards.

He posited that in addition to objective standards and criteria (which he conceded he did not

consider or apply), an important, subjective question in evaluating the adequacy of a warning is

whether "there appear[s] to have been a genuine, sincere effort to communicate to warning to its

target audience?", which he then answered, writing that the "Riddell warning seems to me to be a

very minimal, and not very well thought-out effort."[74] Likewise, he admitted that whether he could

"come up with something better" than Riddell's exterior warning labels factored into his overall

---

[70] *Rock v. Smith*, 985 F. Supp. 2d 1066, 1072 (S.D. Iowa 2013).

[71] *Rock*, 985 F. Supp. 2d at 1072; *Brown*, 893 S.W.2d at 644.

[72] *Gerber v. Hoffmann-La Roche, Inc.*, 392 F. Supp. 2d 907, 915 (S.D. Tex. 2005); *Rowson v. Kawasaki Heavy Indus.*, 866 F. Supp. 1221, 1240 (N.D. Iowa 1994).

[73] *E.g.*, *Cummings v. Deere Co.*, 589 F. Supp. 2d 1108, 1118–19 (S.D. Iowa 2008) (finding expert testimony required, and because the court had excluded plaintiff's lone expert, plaintiff did "not have sufficient evidence that the [product] was not reasonably safe"); *Rios*, 143 S.W.3d at 118 ("A jury could not have determined, without the benefit of expert testimony, which, among many, warnings and instructions should be printed on a [tire's] sidewall.").

[74] SOF No. 30 (Motley Reps. 9).

subjective opinion regarding the adequacy of the warning he evaluated.[75] But whether Riddell "genuinely" and "sincerely" made an effort to communicate its warning is not the standard. Nor is whether Dr. Motley could come up with a "better" warning. Indeed, just because a supposedly "better" warning *could* exist does not mean the warnings Riddell actually provided were inadequate.[76] These patently subjective portions of Dr. Motley's opinions do nothing to support plaintiffs' burden to show that Riddell's warnings were inadequate.

Dr. Motley's opinions vis-à-vis the actual standards for evaluating a warning's adequacy also fall well short of the mark because he provided no evidentiary foundation for them, and he failed to consider the full scope of warnings provided by Riddell (and others). As just one example, in criticizing the location of Riddell's warnings, Dr. Motley blithely opined that "it is questionable whether the back of a player's helmet is an appropriate placement for a warning," without offering any support for this assertion.[77] Having a subjective question about the propriety of something doesn't translate into that thing being improper. Moreover, this "question" is entirely answerable, because there are and have been industry standards and governmental requirements (of which Dr. Motley was unaware and never consulted) with which Riddell's exterior warning label complied[78], not to mention testing, which Dr. Motley wholly eschewed.

Similarly, Dr. Motley posited that the warnings Riddell provided were neither clear to an

---

[75] *Id.*

[76] Restatement (Third) of Torts: Products Liability § 2 cmt. *i* ("Product warnings and instructions can rarely communicate all potentially relevant information, and the ability of a plaintiff to imagine a hypothetical better warning in the aftermath of an accident does not establish that the warning actually accompanying the product was inadequate."); *cf. Johnson v. Kroger Co.*, No. 3:19-cv-371, 2020 WL 3064709, at *2 (N.D. Tex. June 9, 2020) (explaining, in premises liability case, that the "fact that [the defendant] could have provided more specific, prominent, or additional warnings does not render the warning it provided inadequate").

[77] SOF No. 33.

[78] *E.g.*, SOF No. 34.

average user nor complete, and he offered some snippets of language that he mused would be clearer and more complete.[79] Yet he admitted he did not evaluate the full set of warnings—including interior warning labels, hang tags, and fitting instructions in addition to the exterior warning label—that Riddell provided with its helmets.[80] He also admitted that he is not an expert in any relevant respect (e.g., football rules, play, and injury risks, the standards applicable to football helmet labels, the science of head and brain injuries, etc.); he has not researched what information the average user would have from sources other than Riddell or what an average user would understand the term "concussion" and its potential consequences to mean; he has not tested the clarity, consistency, consequence, or purported superfluousness of Riddell's warning label; and he had no objective basis for offering these criticisms and his suggested alternatives.[81] Indeed, he admitted that his criticisms and his alternative, incomplete proposals were merely his subjective hypothesis unless and until they were tested, which he has not done nor does he plan to do.[82]

What plaintiffs are left with, then, are the subjective and unsupported musings of an admitted non-expert who relied on incomplete material from plaintiffs' counsel to craft his un-expert and uninformed opinions.[83] So, even if Dr. Motley thinks that Riddell did not make a "genuine, sincere effort" to warn (whatever that means) and that he could have drafted a better warning than Riddell did (when it is abundantly clear that he cannot and did not), this does nothing to help plaintiffs meet their burden of showing that the warnings Riddell did provide were inadequate. In such circumstances, summary judgment in Riddell's favor is necessary.[84]

---

[79] SOF No. 32 (Motley Rep. 5–8).
[80] *E.g.*, SOF No. 27 (Motley Dep. 100:7–104:7; *also* Sala Rep. 2–17 (detailing history of football helmet warnings and the scope of warnings provided by Riddell over pertinent time)).
[81] *E.g.*, SOF Nos. 26–28, 30–31.
[82] SOF Nos. 30–31, 36.
[83] SOF No. 27 (Motley Dep. 52:15–55:16, 94:7–95:6); *also* SOF Nos. 28, 30, 31.
[84] *E.g.*, *Junk*, 2008 WL 5191865, at *7; *DeGrate*, 261 S.W.3d at 411–12.

### D. Plaintiffs have no expert testimony on specific causation.

Not only must plaintiffs show that Riddell's warnings were inadequate and caused them injury, they must also prove that the alleged warnings defect *actually* caused their specific medical injuries—i.e., their alleged maladies. Both require competent expert support, which plaintiffs lack.

***Specific Medical Causation.*** The Court has already stated that every plaintiff must have expert testimony to prove "the origin of [their] injuries."[85] The seven remaining bellwether plaintiffs all designated Dr. Benson as their sole expert on medical causation. In his deposition, however, and as Riddell has shown in its pending motion for terminating sanctions, Dr. Benson unequivocally disavowed having reviewed *any* case-specific materials before plaintiffs served his supposed reports, having performed *any* case-specific analysis, and having derived *any* specific-causation opinions regarding any plaintiff.[86] Simply put, plaintiffs' lone designated specific-causation expert admitted he has *no* specific-causation opinions, leaving plaintiffs with no evidence whatsoever to meet the Court's directive that they present expert opinion testimony as to their claimed injuries. This failure alone compels summary judgment for Riddell.

Moreover, given that Dr. Benson provides no case-specific analysis, plaintiffs lack the necessary expert evidence to rule out potential alternative causes for their claimed maladies—of which there are many, as Riddell's experts and case law show. In Texas, proving specific causation requires that an expert must "carefully consider alternative causes," and that an expert's "failure to rule out other causes of the damage renders his opinion little more than speculation."[87] So too in Iowa.[88] Alternative causation is especially important for plaintiffs given their claimed maladies—e.g., depression, headaches, memory loss, attention issues, and impulsivity—are

---

[85] (Mem. Op. 13, ECF No. 409.)
[86] SOF Nos. 16–19.
[87] *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex. 1995).
[88] *See, e.g.*, *Korte v. Mead Johnson & Co.*, 824 F. Supp. 2d 877, 896–98 (S.D. Iowa 2010).

overwhelmingly common in the general population and can have many causes.[89] Even Dr. Benson admitted this, after he learned for the first time in his deposition what the plaintiffs were alleging.[90]

Simply put, to meet their burden on specific medical causation, plaintiffs must have competent expert testimony establishing that the development of their claimed maladies is attributable to football, and not merely the product of being human. They indisputably do not. Conversely, as Riddell shows in its concurrently filed plaintiff-specific motions for summary judgment, Riddell disclosed case-specific reports from IME physicians who examined each plaintiff, their records, and medical histories; drafted plaintiff-specific reports as to each; and applied reliable, medically sound methodology to conclude that none of the plaintiffs' claimed maladies can be properly attributed to playing football.

***Warnings Causation.*** Both Texas and Iowa require that a defendant's failure to warn be a causative nexus in a plaintiff's alleged injury in order for the plaintiff to prevail on a warnings claim.[91] Although they ascribe varying monikers to the sub-components of this element, both require as part of the causation element that plaintiffs prove their injuries would not have occurred but for the alleged warnings defect.[92] Additionally, both require as part of the causation inquiry that the plaintiff show a supposedly adequate warning would have altered his conduct such that it would have made a difference in avoiding the claimed injury.[93] Again, expert testimony is required

---

[89] *See, e.g.*, *Giles v. Astrue*, 483 F.3d 483, 488 n.2 (7th Cir. 2007) ("Indeed, there are many causes of attention and impulsivity problems, such as learning disabilities, sensory deficits, neurological problems, organization, and stress."); Ref. Manual on Scientific Evid. 671 (3d ed. 2011) (recognizing that nonspecific symptoms, such as headaches, are "part of the human experience").
[90] SOF Nos. 12, 15.
[91] *E.g.*, *Daughetee*, 960 F. Supp. 2d at 872; *DeGrate v. Exec. Imprints, Inc.*, 261 S.W.3d 402, 412 (Tex. App. 2008).
[92] Iowa Jury Instr. 1000.8 (Proximate Cause); *Rock*, 985 F. Supp. 2d at 1072; *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007).
[93] *E.g.*, *Mercer*, 616 N.W.2d at 624; *Saenz*, 873 S.W.2d at 357.

to show warnings causation in circumstances such as these.[94]

The Court need not even reach this issue, given plaintiffs' numerous failures of proof in other central elements, e.g., duty to warn, breach (i.e., warnings defect), and general- and specific-medical injury causation.[95] But this issue provides yet another reason for summary judgment on plaintiffs' remaining warnings claims across the board, in that they all uniformly lack the requisite expert testimony to support warnings causation.[96]

Indeed, plaintiffs' only expert addressing warnings, Dr. Motley, testified that his self-perceived role in this litigation was to opine only on the "quality" of Riddell's warnings.[97] He has no opinions that Riddell owed any duty to warn—nor as to what—such that any alleged breach of some unidentified duty could be a cause of plaintiffs' alleged injuries in the first place. He also neither offered nor did the necessary work to offer any opinions as to warnings causation—e.g., that an alleged inadequacy was the cause of each plaintiff's injuries, and that an alternative warning would have made any difference as to each of them.

Dr. Motley's lack of opinions on this issue is unsurprising since he admitted he did not consider what other information plaintiffs and their parents, coaches, trainers, schools, or medical providers already possessed or conveyed concerning alleged risks from playing football—such as would be necessary to opine that an alleged warnings inadequacy by Riddell made any difference.[98] And Dr. Motley admitted there are many reasons why a player may not follow a particular warning or instruction, including that he may chose not to read it, he may not care about

---

[94] *E.g.*, *Rock*, 985 F. Supp. 2d at 1072; *DeGrate*, 261 S.W.3d at 412.
[95] *E.g.*, *Rock*, 985 F. Supp. 2d at 1074; *Rios*, 143 S.W.3d at 118.
[96] Although Texas employs a heeding presumption, as Riddell explains in its concurrently filed plaintiff-specific motions for summary judgment, this presumption does not salvage any of their claims on this element. Iowa has not adopted a heeding presumption.
[97] SOF No. 24.
[98] SOF No. 28 (Motley Dep. 55:17–57:24, 63:7–64:16).

it, he thinks he already knows the information in it, or he thinks the thing warned about might not happen to him.[99] Dr. Motley further admitted that he was not offering any opinions regarding whether any of the plaintiffs in particular would have followed his subjective, untested, hypothetical warning language either.[100]

At bottom, Dr. Motley offers nothing on warnings causation. Without proof on this issue, plaintiffs' lone remaining claims for warnings defect fail for yet another reason.[101]

## CONCLUSION

This litigation is almost five years old. Since plaintiffs filed their first complaint, the parties and the Court have participated in rounds of pre-answer motions briefing and amended complaints, a Science Day focused on the crucial issue of medical causation, the selection of bellwether plaintiffs, fact and expert discovery regarding those selected bellwether plaintiffs, two rounds of summary judgment stemming from plaintiffs' as-now-proven fraudulent expert disclosures regarding causation, and now, at the close of all discovery, more motions to exclude plaintiffs' experts and motions for summary judgment based on both overarching and case-specific failures of plaintiffs' lone remaining warnings claims. At each turn, plaintiffs have repeatedly told the Court they have demonstrable injuries from playing football, and that they have sufficient evidence to support these claims and to hold Riddell responsible.

Yet despite all the time, all the discovery, all the bluster and promises, and all the Court and party resources consumed, plaintiffs have nothing more now than they had at the pleadings stage. And despite insisting that their claims must proceed into discovery and that the Court not address causation first, other than promulgating minimal written discovery on Riddell (which they

---

[99] SOF No. 35.
[100] SOF No. 32 (Motley Dep. 173:9–14).
[101] *E.g.*, *Rock*, 985 F. Supp. 2d at 1074; *DeGrate*, 261 S.W.3d at 411–12.

never provided to their experts and have not once cited in any of the rounds of briefing to date), plaintiffs took no depositions (not of any fact or Riddell witnesses, nor of Riddell's experts), and they pursued no discovery whatsoever from any third parties. Their experts' work was threadbare and minimal—and in the case of Dr. Benson, virtually non-existent. In fact, plaintiffs' claims are so devoid of any supporting evidence that they resorted to serving fraudulent expert reports on behalf of Dr. Benson, which merely copied a handful of allegations from their complaint.

Discovery has closed. This is the "put up or shut up' moment."[102] Plaintiffs can no longer survive on promises of better or more evidence down the road.[103] Moreover, the Court has seen that such promises from these plaintiffs ring hollow—for example, the promise that they would present admissible, reliable science regarding general causation, and the promise that Dr. Benson would perform case-specific analysis and testing. Indeed, after nearly five years of litigation, plaintiffs have nothing. And plaintiffs' nothing stands in stark contrast to the abundant, competent, reliable evidence from Riddell showing that their claims are and always have been meritless.

This litigation has persisted long enough. It is time to grant Riddell summary judgment on the merits and dismiss the claims of all plaintiffs—bellwether and otherwise—with prejudice.

Respectfully submitted,

Dated: September 30, 2021      **BOWMAN AND BROOKE LLP**

By:   */s/ Paul G. Cereghini*
      Paul G. Cereghini (*Pro Hac Vice*)
      BOWMAN AND BROOKE LLP
      2901 North Central Avenue, Suite 1600
      Phoenix, AZ 85012
      Telephone: (602) 643-2300
      Facsimile:  (602) 248-0947

---

[102] *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).
[103] *E.g.*, *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 976 (7th Cir. 2020) (stating that on summary judgment, "a promise to come forward with more evidence soon is not sufficient").

paul.cereghini@bowmanandbrooke.com

Robert L. Wise
Eden M. Darrell
BOWMAN AND BROOKE LLP
901 East Byrd Street, Suite 1650
Richmond, VA 23219
Telephone: (804) 649-8200
Facsimile:  (804) 649-1762
rob.wise@bowmanandbrooke.com
eden.darrell@bowmanandbrooke.com

David J. Duke
BOWMAN AND BROOKE LLP
2901 Via Fortuna Drive, Suite 500
Austin, TX 78746
Telephone: (512) 874-3800
Facsimile: (512) 874-3801
david.duke@bowmanandbrooke.com

Mark H. Boyle
Thomas Cushing
DONOHUE BROWN MATHEWSON &
SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone: (312) 422-0900
Facsimile:  (312) 422-0909
mark.boyle@dbmslaw.com
cushing@dbmslaw.com

*Attorneys for the defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2021, the foregoing was filed with the Clerk using the CM/ECF system, which will provide notice to all counsel of record.

*/s/ Paul G. Cereghini*
Paul G. Cereghini *(Pro Hac Vice)*
BOWMAN AND BROOKE LLP
2901 North Central Avenue, Suite 1600
Phoenix, AZ 85012
Telephone: (602) 643-2300
Facsimile:  (602) 248-0947
paul.cereghini@bowmanandbrooke.com

Robert L. Wise
Eden M. Darrell
BOWMAN AND BROOKE LLP
901 East Byrd Street, Suite 1650
Richmond, VA 23219
Telephone: (804) 649-8200
Facsimile:  (804) 649-1762
rob.wise@bowmanandbrooke.com
eden.darrell@bowmanandbrooke.com

David J. Duke
BOWMAN AND BROOKE LLP
2901 Via Fortuna Drive, Suite 500
Austin, TX 78746
Telephone: (512) 874-3800
Facsimile:  (512) 874-3801
david.duke@bowmanandbrooke.com

Mark H. Boyle
Thomas Cushing
DONOHUE BROWN MATHEWSON &
SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone: (312) 422-0900
Facsimile:  (312) 422-0909
mark.boyle@dbmslaw.com
cushing@dbmslaw.com

*Attorneys for the defendants*